Filing # 138602881 E-Filed 11/16/2021 11:38:44 AM

IN THE COUNTY COURT OF THE SIXTH JUDICIAL CIRCUIT
IN AND FOR PASCO COUNTY, FLORIDA
SMALL CLAIMS DIVISION

JENNIFER TROUT,

    *Plaintiff,*

    v.

MIDLAND FUNDING, LLC, *and*
MIDLAND CREDIT MANAGEMENT, INC.,

    *Defendants.*

Case No.: _____

Ad Damnum: **$2,000 + Atty Fees & Costs**

**JURY TRIAL DEMANDED**

## COMPLAINT AND DEMAND FOR JURY TRIAL

COMES NOW the Plaintiff, **Jennifer Trout** ("**Ms. Trout**"), by and through her attorneys, Seraph Legal, P.A., and complains of the Defendants, **Midland Funding, LLC** ("**Midland**"), and **Midland Credit Management, Inc.** ("**MCM**") (jointly, the "**Defendants**"), stating as follows:

## PRELIMINARY STATEMENT

1.    This is an action brought by Ms. Trout against the Defendants for violations of the *Fair Debt Collection Practices Act*, 15 U.S.C. § 1692, *et seq.* ("**FDCPA**"), and the *Florida Consumer Collection Practices Act*, Section 559.55, *et seq.*, Florida Statutes ("**FCCPA**").

## JURISDICTION AND VENUE

2.    Subject matter jurisdiction arises under the FDCPA, 15 U.S.C. § 1692k(d), the FCCPA, Section 559.77(1), Florida Statutes, and Section 34.01, Florida Statutes.

3.    The Defendants are subject to the provisions of the FDCPA and the FCCPA, and to the jurisdiction of this Court pursuant to Section 48.193, Florida Statutes.

4.    Venue is proper in Pasco County, Florida, because the acts complained of were committed and/or caused by the Defendants within Pasco County.

## PARTIES

### Ms. Trout

5.     **Ms. Trout** is a natural person residing in the City of Wesley Chapel, Pasco County, Florida, and a *Consumer* as defined by the FDCPA, 15 U.S.C. § 1692a(3), and the FCCPA, Section 559.55(8), Florida Statutes.

### Midland

6.     Midland is a Delaware foreign limited liability company with a principal business address of **350 Camino de la Reina, Suite 300, San Diego, CA 92108.**

7.     Midland is registered to conduct business in the State of Florida, where its Registered Agent is **Midland Credit Management, Inc., 13008 Telecom Drive, Suite 350, Tampa, FL 33637.**

### MCM

8.     **MCM** is a Kansas foreign profit corporation with a principal business address of **350 Camino de la Reina, Suite 300, San Diego, CA 92108.**

9.     MCM is registered to conduct business in the State of Florida, where its Registered Agent is **Midland Funding, LLC, 13008 Telecom Drive, Suite 350, Tampa, FL 33637.**

### Defendants Are Debt Collectors

10.     The Defendants are *Debt Collectors* within the meaning of the FDCPA, 15 U.S.C. §1692a(6), and the FCCPA, Section 559.55(7), Florida Statutes, in that they use postal mail and/or another instrumentality of commerce, interstate and within the state of Florida, for their businesses, the principal purposes of which are the collection of debts, and/or they regularly collect or attempt to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

11.     MCM's website states "Midland Funding LLC is one of the nation's largest buyers of unpaid debt. Midland Funding LLC purchases accounts with an unpaid balance where consumers have gone at least 180 days without making a payment or paid less than the minimum monthly payment."

12.     Midland and MCM are registered with the Florida Office of Financial Regulation as *Consumer Collection Agencies* ("CCAs"), holding license numbers, **CCA0900917** and **CCA0900916**, respectively.

13.     As licensed CCAs, the Defendants know or should know the requirements of the FDCPA and FCCPA.

## FACTUAL ALLEGATIONS

### The Debt

14.     Sometime prior to August 2021, Ms. Trout opened a consumer charge account with a financial institution, for in store purchases with a specific retailer.

15.     Sometime prior to August 2021, the financial institution charged an outstanding balance to profit and loss (the "**First Debt**").

16.     Sometime prior to August 2021, Ms. Trout opened up a second consumer charge account with a financial institution, for in store purchases with a specific retailer.

17.     Sometime prior to August 2021, the financial institution charged an outstanding balance to profit and loss (the "**Second Debt**") (jointly the "**Debts**").

18.     The Debts arose from goods and services that were primarily for family, personal, or household purposes, specifically consumer charge cards used to make personal and family purchases, and therefore the Debts meet the definition of "debt" under the FDCPA, 15 U.S.C. § 1692a(5) and the FCCPA, Section 559.55(6), Florida Statutes.

19.    Both financial institutions then sold the charged-off accounts to Midland.

20.    Midland assigned the First Debt account number XXXXX9396, and the Second Debt XXXXX9698.

21.    Midland thereafter assigned the accounts to MCM for collection.

22.    Upon receiving placements of the Debts from Midland, MCM sent several collection letters to Ms. Trout at her home in Florida.

## MCM Offers Faux "Limited Time" 10% Discounts

23.    For years, MCM has attempted to collect charged-off debts it purchases by sending purported "discount settlement offers" which make clear that the offer is valid "for a limited time only."

24.    In reality, these "limited-time" offers are not actually for a limited time. Should the consumer fail to take advantage of the first "limited-time" offer, MCM simply mails the consumer another, identical offer, marked "limited-time offer" as well.

25.    On or about August 11, 2021, MCM mailed correspondence to Ms. Trout to her home in Pasco County, Florida, attempting to collect the First Debt. **SEE PLAINTIFF'S EXHIBIT A.**

26.    The letter stated that Ms. Trout was "pre-approved" for a 10% discount on the charged-off balance, stating in part: "Option 1, 10% off, offer expiration date: 9/10/2021." *Id.*

27.    On or about September 26, 2021, MCM mailed another collection letter attempting to collect the First Debt, again offering 10% off the balance to resolve the account. This iteration claimed, "All offers expire 10/26/2021." **SEE PLAINTIFF'S EXHIBIT B.**

28.    On or about August 11, 2021, MCM mailed correspondence to Ms. Trout to her home in Pasco County, Florida, attempting to collect the Second Debt. **SEE PLAINTIFF'S EXHIBIT C.**

29.     The letter stated that Ms. Trout was "pre-approved" for a 10% discount on the charged-off balance, stating in part" "Option 1, 10% off, offer expiration date: 09/10/2021." *Id.*

30.     On or about September 26, 2021, MCM mailed another collection letter attempting to collect the Second Debt, again offering 10% off the balance to resolve the account. This iteration claimed, "All offers expire 10/26/2021." **SEE PLAINTIFF'S EXHIBIT D.**

31.     MCM has sent Ms. Trout additional letters offering the same 10% discount since July 2021, each of which purported to be for a "limited time" only.

32.     Each letter stated an amount owed, stated that it was an attempt to collect a debt, and conveyed an offer to resolve the debt.

33.     As such, each letter was in connection with the collection of a debt.

34.     While each letter was framed as a "limited-time" offer, the offer was clearly not available only for a limited time.

35.     Rather, this 10% discount offer, and the other payment options included in each letter, would have been made available to Ms. Trout at any point after July 2021 and was never rescinded.

36.     On information and belief, the Defendants would have accepted the 10% discount to settle the Debts, even after July 2021, despite its collection letters each proclaiming that Ms. Trout had to "hurry" to accept the offer before the relevant artificial deadline.

37.     The Defendants' purported "expiration dates" are nothing more than a tool to convince the unsophisticated consumer that payments of the Debts are time sensitive in order to induce payment.

38.     A debt collector "cannot pretend that [a settlement offer] is final if it is not, in the hope that the debtor will think it final." *DeKoven v. Plaza Assocs.*, 599 F.3d 578, 582 (7th Cir. 2010); *see also Peter v. GC Services L.P.*, 310 F.3d 344 (5th Cir. 2002) (Section 1692e was enacted against a

backdrop of cases in which courts held that communications designed to create a false sense of urgency were deceptive).

39.     The Defendants' letters were clearly designed to convey a false sense of urgency to Ms. Trout, sending her a clear message that she must pay quickly or risk losing out on the "limited-time" discount.

40.     The Defendants attempted to disadvantage Ms. Trout in charting a course of action to take regarding the allegation of debts by falsely conveying that there was a deadline to accept the 10% balance reduction offers.

41.     The Defendants' statement that "All offers expire..." is objectively false, since the Defendants would still have accepted the same discounted amount to settle the Debts even after the date on each of the letters.

42.     The Defendants' letters are also misleading for the same reasons, since an unsophisticated consumer would believe that should she not pay the amount by the expiration date, the Defendants would attempt to collect the full, undiscounted amount from her.

43.     The Defendants are aware that many consumers do not open or read the debt collection letters mailed to them; thus, many consumers would not notice a "limited-time" offer being proffered to her was, in reality, identical to one offered in the past.

44.     Upon receipt of the Defendants' letters, Ms. Trout was in fact confused as to whether the debts were time-sensitive. As a result, Ms. Trout sought legal counsel to chart a court of action in response.

### Defendants' Unauthorized Disclosures of Protected Information to Third Party

45.     As aforementioned, MCM, in an effort to collect the Debts from Ms. Trout, mailed Ms. Trout multiple collection letters.

46.     However, rather than prepare and mail the collection letters on its own, MCM communicated information to a third-party, commercial mail house (the "**Mail House**").

47.     MCM disclosed highly personal information regarding Ms. Trout and the Debts to the Mail House, including: (a) Ms. Trout's status as a debtor; (b) Ms. Trout's contact information; (c) the account numbers associated with the Debts; and, (d) the amounts Ms. Trout supposedly owed to each financial institution.

48.     The Mail House then populated some or all of this information into a pre-written template, printed, and mailed the letters to Ms. Trout's residence in Pasco County, Florida.

44.     The term *Communication* is defined in the FDCPA, 15 U.S.C. §1692a(3), as "the conveying of information regarding a debt directly or indirectly to any person through any medium."

45.     MCM sent an electronic file containing information about Ms. Trout and the purported Debts to the Mail House.

46.     Thus, MCM's communications to the Mail House are *Communications* as defined by the FDCPA.

47.     MCM's communications to the Mail House involved disclosure of the Debts to a third party with instructions to produce collection letters and mail them to Ms. Trout, the consumer, with the objective that the correspondence would motivate her to pay the alleged Debts.

48.     MCM's communications to the Mail House were thus in connection with the collection of debts since

49.     The Mail House is a distinct entity not owned by MCM.

50.     The Mail House is neither a consumer reporting agency nor an attorney, as referenced in 15 U.S.C. § 1692c(b).

51.     Ms. Trout never consented to having her personal and confidential information, concerning the Debts or otherwise, shared with any mail house.

52.     15 U.S.C. § 1692c(b) states:

> Except as provided in section 1692b of this title, without the prior consent of the consumer given directly to the debt collector, or the express permission of a court of competent jurisdiction, or as reasonably necessary to effectuate a post judgment judicial remedy, a debt collector may not communicate, in connection with the collection of any debt, with any person other than the consumer, his attorney, a consumer reporting agency if otherwise permitted by law, the creditor, the attorney of the creditor, or the attorney of the debt collector. (Emphasis added).

53.     The Mail House does not fall within any of the categories listed within 15 U.S.C. § 1692c(b).

54.     Due to MCM's communications to the Mail House, information about Ms. Trout and the purported Debts, including her name and contact information, the original creditors' names, the current creditors' names, and the amounts she supposedly owes, are all within possession of a third party not expressly listed within 15 U.S.C. § 1692c(b).

55.     If a debt collector "conveys information regarding the debt to a third party – informs the third party that the debt exists or provides information about the details of the debt – then the debtor may well be harmed by the spread of this information." *Brown v. Van Ru Credit Corp.*, 804 F.3d 740, 743 (6th Cir. 2015).

56.     Communications from debt collectors to mail houses are not exempt from the provisions of 1692c(b) and are "in connection with" the collection of a debt. *See Hunstein v. Preferred Collection & Mgmt. Servs.*, 19-14434 (11th Cir. Oct. 28, 2021).

57.     The Defendants devised this strategy of communicating to a third-party mail house so that it could churn out more collection letters than if it kept all of the work "in house."

58.    This mail house strategy allowed the Defendants to generate more profit and gain an advantage over their debt collection competitors.

59.    In reckless pursuit of these business advantages, Defendants disregarded the known, negative effects that disclosing sensitive personal information to an unauthorized third party would have on a consumer.

60.    The Defendants' unauthorized and prohibited communications caused Ms. Trout, a consumer who highly values her privacy, significant emotional distress since her confidential, legally protected, personal information had been unlawfully disseminated to third parties.

61.    At all times relevant, MCM was acting on behalf of Midland and within the scope of its authority.

62.    Midland, as principal, is liable for the actions of its agent, MCM.

63.    MCM routinely communicates with the Mail House for the purpose of mailing collection letters.

64.    Midland thus knew, or should have known, that MCM would send Ms. Trout's information to the Mail House.

65.    The Defendants' aforementioned conduct has caused Ms. Trout to suffer emotional distress and has further damaged her in that she has spent time in procuring the undersigned legal counsel to assist with charting a course of response to Defendants.

66.    Ms. Trout has hired the aforementioned law firm to represent her in this matter and has assigned her right to fees and costs to such firm.

## COUNT I
## VIOLATIONS OF THE FDCPA - 15 U.S.C. § 1692c(b)

67.  Ms. Trout adopts and incorporates paragraphs 1 – 66 as if fully stated herein.

68.  MCM, acting as Midland's agent, violated **15 U.S.C. § 1692c(b)** when it disclosed information about Ms. Trout and the purported Debts to an unauthorized third-party mail house and the employees of that mail house, in connection with the collection of the Debts, without Ms. Trout's consent or authority.

69.  At all times relevant hereto, MCM was acting as Midland's authorized agent, within its scope of authority and upon its direction. As a result, Midland is jointly liable under the principles of agency for the acts of its agent, MCM.

70.  The Defendants' actions render them jointly and severally liable for the above-stated violations of the FDCPA, and Ms. Trout is therefore entitled to statutory damages not to except $1,000.00, as well as other relief.

**WHEREFORE,** Ms. Trout respectfully requests this Honorable Court enter judgment against MCM and Midland, jointly and severally, for:

a.  Statutory damages of **$1,000.00,** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.  Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.  Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.  Such other relief that this Court deems just and proper.

## COUNT II
## VIOLATIONS OF THE FDCPA - 15 U.S.C. § 1692e

71.  Ms. Trout adopts and incorporates paragraphs 1 – 66 as if fully stated herein.

72.  MCM, acting as agent for Midland, violated **15 U.S.C. § 1692e** when MCM, as acting agent for Midland, used misleading and deceptive means to attempt to collect a debt by repeatedly

claiming Ms. Trout had a "limited time" to settle the alleged Debts at 10% off, when, in reality, the Defendants had no intention of rescinding their offers.

73.     The Defendants' conduct renders them liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Trout respectfully requests this Honorable Court enter judgment against MCM and Midland, jointly and severally, for:

a.     Statutory damages of **$1,000.00,** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.     Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

d.     Such other relief that this Court deems just and proper.

## COUNT III
### VIOLATIONS OF THE FDCPA - 15 U.S.C. § 1692e(10)

74.     Ms. Trout adopts and incorporates paragraphs 1 – 66 as if fully stated herein.

75.     MCM, acting as agent for Midland, violated **15 U.S.C. § 1692e(10)** when MCM, as acting agent for Midland, used misleading and deceptive means to attempt to collect a debt by repeatedly claiming Ms. Trout had a "limited time" to settle the alleged Debts at 10% off, when, in reality, the Defendants had no intention of rescinding their offers.

76.     The Defendants' conduct renders them liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Trout respectfully requests this Honorable Court enter judgment against MCM and Midland, jointly and severally, for:

a.     Statutory damages of **$1,000.00,** pursuant to 15 U.S.C. § 1692k(a)(2)(A);

b.     Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

c.     Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.      Such other relief that this Court deems just and proper.

## COUNT IV
### VIOLATIONS OF THE FDCPA - 15 U.S.C. § 1692e(5)

77.    Ms. Trout adopts and incorporates paragraphs 1 – 66 as if fully stated herein.

78.    The Defendants violated **15 U.S.C. § 1692e(5)** when, MCM acting as agent for Midland, threatened to take action not intended to be taken, to wit, the "expiration" of the 10% off balance offers, when no such legitimate expiration of the offers existed. The Defendants created an arbitrary deadline to create the appearance of an expiring offer, which the Defendants knew was not real.

79.    The Defendants' conduct renders them liable for the above-stated violations of the FDCPA.

**WHEREFORE,** Ms. Trout respectfully requests this Honorable Court enter judgment against MCM and Midland, jointly and severally, for:

    a.      Statutory damages of **$1,000.00**, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    b.      Actual damages, pursuant to 15 U.S.C. § 1692k(a)(2)(A);

    c.      Reasonable costs and attorneys' fees pursuant to 15 U.S.C. § 1692k(a)(3); and,

    d.      Such other relief that this Court deems just and proper.

## COUNT V
### VIOLATION OF THE FCCPA - Section 559.72(5), Florida Statutes

80.    Ms. Trout adopts and incorporates paragraphs 1 – 66 as if fully stated herein.

81.    The Defendants violated **Section 559.72(5), Florida Statutes,** when MCM, acting as agent for Midland, disclosed to the Mail House, a third party, information that would affect Ms. Trout's reputation, specifically, details about her personal financial issues and purported unpaid bills.

82.     The Defendants were aware that there was no legitimate business *need* to convey this information, since the Defendants could easily have prepared and mailed the collection letters themselves, without any need to disclose the information to a third party.

83.     Instead, the Defendants *intentionally decided* to disclose this information to the Mail House, as part of their debt collection effort against Ms. Trout, because it allowed them to gain a competitive advantage over the competition through increased profit margins.

84.     The Defendants' conduct renders them liable for the above-stated violations of the FCCPA, and Ms. Trout is therefore entitled to statutory damages not to exceed $1,000 as well as other relief.

**WHEREFORE**, Ms. Trout respectfully requests this Honorable Court enter judgment against MCM and Midland, jointly and severally, for:

a.      Statutory damages of **$1,000.00** pursuant to Section 559.77(2), Florida Statutes;

b.      Actual damages pursuant to Section 559.77(2), Florida Statutes;

c.      Injunctive relief preventing the Defendants from making any further communications to the unauthorized third party when attempting to collect a consumer debt;

d.      Reasonable costs and attorneys' fees pursuant to Section 559.77(2), Florida Statutes; and,

e.      Such other relief that this Court deems just and proper.

## DEMAND FOR JURY TRIAL

Ms. Trout hereby demands a jury trial on all issues so triable.

Respectfully submitted on **November 16, 2021,** by:

**SERAPH LEGAL, P. A.**

/s/ *Bryan J. Geiger*
Bryan J. Geiger, Esq.
Florida Bar Number: 119168
BGeiger@seraphlegal.com
1614 North 19th Street
Tampa, FL 33605
Tel: 813-567-1230 (Ext: 303)
Fax: 855-500-0705
*Counsel for Plaintiff*

## ATTACHED EXHIBITS LIST

| | |
|---|---|
| A | MCM's Collection Letter to Ms. Trout, August 11, 2021, The First Debt - Excerpt |
| B | MCM's Collection Letter to Ms. Trout, September 26, 2021, The First Debt - Excerpt |
| C | MCM's Collection Letter to Ms. Trout, August 11, 2021, The Second Debt - Excerpt |
| D | MCM's Collection Letter, September 26, 2021, The Second Debt - Excerpt |

**EXHIBIT A**
**MCM's Collection Letter to Ms. Trout, August 11, 2021**
**The First Debt - Excerpt**



# EXHIBIT A
## MCM's Collection Letter to Ms. Trout, August 11, 2021
## The First Debt - Excerpt

P.O. Box 340
Waite Park, MN 56387-0340

PRESORTED
FIRST-CLASS
MAIL
U.S. POSTAGE
PAID
MCM

P30
T4326
021

*Jennifer Trout*

**EXHIBIT B**

**MCM's Collection Letter to Ms. Trout, September 26, 2021**
**The First Debt - Excerpt**



## EXHIBIT B
### MCM's Collection Letter to Ms. Trout, September 26, 2021
### The First Debt - Excerpt

PO Box 340
Wate Park, MN 56387-0340

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
MCM



# EXHIBIT C
## MCM's Collection Letter to Ms. Trout, August 11, 2021
## The Second Debt - Excerpt



## EXHIBIT C
## MCM's Collection Letter to Ms. Trout, August 11, 2021
## The Second Debt - Excerpt



PO Box 340
White Park, MN 56387-0340

PRESORTED
FIRST-CLASS MAIL
U.S. POSTAGE
PAID
MCM

**EXHIBIT D**
**MCM's Collection Letter to Ms. Trout, September 26, 2021**
**The Second Debt – Excerpt**



## EXHIBIT D
### MCM's Collection Letter to Ms. Trout, September 26, 2021
### The Second Debt – Excerpt

PO Box 340
Wate Park, MN 56387-0340

PRESORTED
FIRST CLASS MAIL
US POSTAGE
PAID
MCM

